UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDRA VAILS,<br><br>                      Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | CASE NO. 3:18-cv-05253-BAT<br><br>**ORDER REVERSING AND REMANDING** |

Plaintiff Sandra Ann Vails seeks review of the denial of her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. Plaintiff contends the administrative law judge (ALJ) misevaluated the medical opinion evidence and improperly discredited her symptom testimony. Plaintiff seeks remand for further proceedings. The Court agrees that the ALJ erred in misevaluating the medical opinion evidence and for this reason, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

On July 11, 2014, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning March 1, 2014. The claim was denied initially on September 2, 2014, and upon reconsideration on February 12, 2015. Thereafter, Plaintiff filed a written request for hearing on March 13, 2015 (20 CPR 416.1429 *et seq.*). The ALJ conducted a

ORDER REVERSING AND REMANDING - 1

hearing, where Plaintiff appeared and testified, on June 22, 2016. The ALJ found Plaintiff not disabled. Tr. 13-24.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found at step one, that Plaintiff had not engaged in substantial gainful activity since July 11, 2014. At steps two and three, the ALJ found Plaintiff had the following severe impairments: dysfunction of major joint (degenerative joint disease of the right knee), obesity, affective disorder (major depressive disorder), and anxiety disorder, and that these impairments did not meet or equal the requirements of a listed impairment.[2] The ALJ then found that Plaintiff had the residual functional capacity to perform light work:

> Plaintiff can perform light work as defined in 20 CFR 416.967(b) except she can lift and or carry 20 pounds occasionally and up to 10 pounds frequently; she can stand and or walk for approximately 6 hours in an 8-hour workday; and she can sit for approximately 6 hours in an 8-hour workday with normal breaks; she can occasionally climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally kneel, crouch, and crawl; she must avoid concentrated exposure to excessive vibration; she is limited to simple routine tasks, in a routine work environment with simple work-related decisions; and she is limited to occasional interaction with the public.

At steps four and five, the ALJ found Plaintiff has no past relevant work, but as there are occupations (small products assembler; assembler, electrical equipment; and buffing machine tender), that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled. Tr. 15-23. The Appeals Councils denied review on February 22, 2018, making the ALJ's decision the final decision ripe for judicial review. Tr. 1-6.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

**DISCUSSION**

**A.     The ALJ Erred in Weighing Medical Evidence**

Plaintiff argues the ALJ erred in rejecting the opinions of John Haroian, Ph.D., and Dan Neims, Psy.D., who examined Plaintiff at the request of the Department of Social and Health Services (DSHS) and concluded Plaintiff would have marked limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Instead, the ALJ accorded more weight to the opinion of Eugene Kester, M.D., a DSHS physician who did not examine Plaintiff. The Court agrees that the ALJ harmfully erred.

On July 2, 2014, Dr. Haroian examined Plaintiff, conducted a clinical interview, mental status evaluation, and administered tests (Beck Anxiety Inventory (BAI), Beck Depression Inventory (BDI), Trails A and B Tasks). Tr. 282-86. Plaintiff scored in the severe range on the BAI and BDI and exhibited symptoms of anxiety and dysphoria that were marked and ongoing. Tr. 283. During the mental status exam, she was cooperative but anxious; her mood was dysphoric/anxious, her affect was inappropriate to topic at times, she could recall 1 of 3 items on a delayed recall task but with prompting was able to recall 2 more items, and could not spell "world" forward and backward without error. Plaintiff's results on the Trails A and Trails B tests were in the severely impaired range and her abstract thought was considered "somewhat concrete."  Dr. Haroian diagnosed Major Depressive Disorder Recurrent, Severe, and a Generalized Anxiety Disorder and opined that Plaintiff would have marked limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and in her ability to set realistic goals and plan independently. Tr. 283-286.

In September 2014, Dr. Kester reviewed the record and concluded that Plaintiff was able to maintain concentration and pace for routine tasks and that she could work with others on a superficial basis. Tr. 22 (citing Tr. 61-70). Dr. Kester did not examine Plaintiff or administer any clinical tests.

On May 6, 2016, Dr. Neims examined Plaintiff, conducted a clinical interview, mental status examination, administered the Personality Assessment Inventory Screener (PAS) and Rey Fifteen Factor Test, and reviewed Dr. Haroian's psychological assessment. Tr. 597-613. During the mental status examination, Plaintiff reported difficulties with sleep, periods of anxious arousal, elevated heartbeats, mild to moderate agoraphobia, anergia, fatigue, and lethargy. Tr. 602. Plaintiff's results on the Rey Fifteen Factor Test were not indicative of malingering, and her results on the PAS were considered valid, with moderate elevations regarding social withdrawal and health concerns. Tr. 603. Dr. Neims opined that Plaintiff presented with a higher level of functioning than she actually had because of the highly structured support provided through her current living situation and care. Tr. 603. Dr. Neims assessed Plaintiff with marked limitations in her ability to adapt to changes in a routine work setting; make simple worked related decisions; communicate effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 599.

The ALJ rejected the opinions of Dr. Haroian and Dr. Neims that Plaintiff had marked limitations in her ability to complete a work day and work week without interruptions from psychologically based symptoms, but gave great weight to Dr. Kester's opinion as being "consistent with mental status exams," as Plaintiff "performed within normal limits in multiple areas" and "actively pursued work and attended many classes and group meetings." Tr. 22.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id*. Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id*. at 830-31.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). An opinion of a non-examining medical expert does not alone constitute a specific and legitimate reason for rejecting a treating or examining physician's opinion, but it may constitute substantial evidence when it is consistent with other independent evidence in the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747, 751–53 (9th Cir.1989). The Ninth Circuit explained in *Thomas v. Barnhart* that such "independent evidence" could be comprised of "independent clinical findings or other evidence in the record." 278 F.3d at 957.

The ALJ erred in according more weight to the opinion of the DSHS physician who never saw Plaintiff than to the opinions of the two DSHS psychologists who actually examined Plaintiff. As previously noted, the uncontradicted opinion of a treating or examining source may only be rejected for clear and convincing reasons supported by substantial evidence. *See Garrison*, 759 F.3d at 1012. Thus, the ALJ erred when she accorded great weight to the opinion of the non-examining State psychological consultant, which opinion lacked an independent examination or independent clinical findings. *See Lester*, 81 F.3d at 830-31 ("[i]n the absence of

record evidence to support it, the non-examining medical advisor's testimony does not itself constitute substantial evidence …").

Further, the ALJ's reasons for giving little weight to the opinions of Dr. Haroian and Dr. Neims are not supported by substantial evidence. The first reason noted by the ALJ is that these were one-time evaluations and the doctors had not reviewed any records. Drs. Haroian and Neims did not review any records other than DSHS case notes prior to their examinations (Tr. 282-86, 597-613), although Dr. Neims did review Dr. Haroian's psychological assessment (Tr. 597). However, the fact that their conclusions were based on a one-time evaluation is not a reason to give less weight to their opinions and give preference to the opinion of a doctor who *never* evaluated Plaintiff. *See Lester*, 81 F.3d at 832 ("[w]hile this would be a reason to give less weight to [the examining doctor's] opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has never examined the claimant. 20 C.F.R. § 404.1527(d)(1)").

The ALJ's second reason to discount the opinions is that the doctors' evaluations relied heavily on the claimant's unreliable self-reported limitations and abilities. An ALJ may reject even a treating physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). This Court has previously noted that in dealing with mental impairments in particular, "experienced clinicians attend to detail and subtlety in behavior, such as the affect

ORDER REVERSING AND REMANDING - 6

accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Exam [(MSE)] allows the organization, completion and communication of these observations." *See Cope v. Colvin*, 2:15-cv-01744-JRC, 2016 WL 6439940, *3 (W.D. Wash. Nov. 1, 2016) (citing Paula T. Trzepacz and Robert W. Baker, THE PSYCHIATRIC MENTAL STATUS EXAMINATION 3 (Oxford University Press 1993)). "Like the physical examination, the [MSE] is termed the objective portion of the patient evaluation." *Id*. at 4 (emphasis in original). Although "anyone can have a conversation with a patient,...appropriate knowledge, vocabulary, and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" *Id*. at 3. "A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is 'biased by their understanding, experiences, intellect, and personality' (*id*. at 4), and in part because it is not uncommon for a person suffering from a mental illness to be unaware that her 'condition reflects a potentially serious mental illness.'" *George v. Colvin*, 2016 WL 899626 (W.D. Wash. March 2, 2016) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

In addition to Plaintiff's self-reports, Dr. Haroian and Dr. Neims based their conclusions on prior psychiatric records, personal observations, and clinical tests. Both psychologists administered testing including the BAI, BDI, Trails A & B Tasks, Rey 15 Factor Test and PAS. Accordingly, the ALJ's finding was factually and legally inaccurate. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (Rejecting the ALJ's findings where "[h]is paraphrasing of record material is not entirely accurate regarding the content and tone of the record"). Specifically, Dr. Haroian noted that although Plaintiff was cooperative, she was anxious, her mood was dysphoric/anxious, and her affect was inappropriate to topic at times. Tr. 283-285. Dr. Neims

noted Plaintiff was cooperative and passive, but dysphoric/anxious, that her affect was restricted, and that her concentration and abstract thought were "borderline." Tr. 559-600. Dr. Neims also opined that Plaintiff presented with a higher level of functioning than she actually had because of the highly structured support provided through her current living situation and care. Tr. 603. Thus, substantial evidence does not support the ALJ's rejection of these opinions as based more heavily on self-reports than on clinical observations and findings.

The ALJ also erred with regard to his third reason to reject the opinions that Plaintiff is markedly limited in her ability to work, *i.e.*, that the assessments are inconsistent with the longitudinal history ("as many areas on mental status exams are within normal limits including logical thought process."). Here, the ALJ offered no specific explanation of how the longitudinal record or the "many areas on mental status exams" contradicted the assessments of marked limitations in Plaintiff's ability to adapt to changes in a routine work setting, make simple worked related decisions, communicate effectively in a work setting; maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms, and in her ability to set realistic goals and plan independently. *See generally Belanger v. Berryhill*, 685 Fed.Appx. 596 (9th Cir.2017) ("… the ALJ did not explain which aspects of [the treating physician's] opinion he found inconsistent with the record. Such boilerplate criticism, without more, is insufficient to reject a treating physician's opinion under this court's precedent.") (citing *Garrison*, 759 F.3d at 1012-13). This general, unsupported statement fails to satisfy the legal standard. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting 42 U.S.C. § 405(b)(1)) (Finding that an ALJ's failure to explain his reasoning "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence" and 'the reason or reasons upon which his adverse

determination is based'"). Plaintiff argues that, at best, the ALJ cherry-picked evidence from the mental status examinations to support her conclusions. The Court agrees and, because the ALJ did not consider the record as a whole, she erred. *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) ("We cannot affirm, however, by isolating a specific quantum of supporting evidence, but must consider the record as a whole").

Finally, the ALJ found that Plaintiff's activities of daily living (actively looking for work, participating in job interviews, performing cleaning jobs, attending and participating in various trainings, classes, and groups, and using public transportation) are inconsistent with the opinions that she is markedly limited in her ability to work. While activities of daily living may provide a basis for discounting a physician's opinion, here again it is essential to consider the whole record when utilizing them as a basis for denying disability benefits. *Attmore*, 827 F.3d at 875.

Plaintiff points out that the ALJ ignored Dr. Neims' observation that Plaintiff's current level of functioning, which was marginal at best, is dependent on a highly structured setting where she receives care and support, which would not be present outside of this environment. Tr. 603. *See* 20 C.F.R. Pt. 404, Subt P, App. 1 § 12.00 D (How do we consider psychosocial supports, structured settings, living arrangements and treatment?). In *Garrison*, the Ninth Circuit recognized this issue as a failing in ALJ decisions:

> The critical differences between activities of daily living and activities in a fulltime job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Garrison*, 759 F.3d at 1016 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Other evidence shows that Plaintiff became overwhelmed trying to fill out disability paperwork (Tr. 484), had difficulty scheduling Paratransit (Tr. 489), missed group class (Tr.

491), missed appointments, because she was at another appointment (Tr. 493), and did not show up for a scheduled appointment because she was at doctor's appointment and forgot to cancel (Tr. 498). The records also show that Plaintiff requested assistance and guidance with relatively simple tasks, such as ordering household supplies (Tr. 486), reviewing bills and mailing a package to her daughter (Tr. 494), and obtaining crutches following her knee surgery (Tr. 501). In addition, the ALJ's reliance on Plaintiff's performance of cleaning jobs as a basis to discount the examining medical expert opinions inaccurately paraphrases the record. Although Plaintiff did cancel an appointment because she was helping a friend perform light housework, Plaintiff testified that the incident was a "one-time thing," she had been unable to perform any part time work either formally or "off the record," and was not doing cleaning jobs on the side. Tr. 36, 41.

Accordingly, the ALJ's weighing of the medical opinion evidence was not supported by substantial evidence or free of harmful legal error when the record is considered as a whole. *Garrison*, 759 F.3d at 1009 (the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence") (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). This error was harmful because the ALJ failed to include these limitations in the RFC or in the hypothetical to the vocational expert. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy).

**B.      Credibility**

Where a disability claimant presents evidence of an impairment and there is no evidence of malingering, this Court applies the specific, clear, and convincing reasons standard of review

to the ALJ's finding as to whether the claimant's testimony fits the evidence about the period at issue. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). However, a reviewing court may not substitute its judgment for the ALJ's reasonable interpretation of the evidence. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ concluded that Plaintiff's statements regarding her symptoms were not entirely credible" because: (i) the statements are not substantiated by medical evidence; (ii) plaintiff's anxiety improved with mental health treatment and sobriety; (iii) the statements are inconsistent with plaintiff's activities of daily living and social interaction; and (iv) plaintiff stopped work for reasons other than disability. Tr. 18. Plaintiff directly challenges these grounds for discounting her credibility, but first argues that the ALJ failed to sufficiently catalog the statements she found to be not credible, citing *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015).

In *Brown-Hunter*, the Ninth Circuit found that the ALJ erred when she failed to specifically identify inconsistencies between the claimant's testimony and the record; and instead, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her [residual functional capacity] determination." *Id*. at 494. Here, however, the ALJ specifically identified the testimony she found not credible, linked the testimony to the medical record, and reasonably interpreted the evidence.

For example with regard to Plaintiff's claim of disabling right knee impairment such that she was unable to walk more than 1-2 blocks once a day and had no improvement after knee surgery, the ALJ cited to July 2014 negative x-rays of the right knee and doctor's instructions to exercise regularly; September 2014 physical therapy records showing improvement and a less antalgic gait; April 2014 records indicating physical therapy and injections were helpful and Plaintiff was walking 5 days per week; an examination in October 2015 that showed some

tenderness but no joint effusion and natural limb alignment, stability, and range of motion from 0 to 105 degrees limited by body habitus; a report by Plaintiff in March 2016 (one week post-surgery) that she was doing well and examination showing stable ligament, and 4/5 strength in all muscles tested; and Plaintiff's self-report in group session that she had a "knee surgery that was successful." Tr. 18-19 (internal citations omitted).

With regard to Plaintiff's statements that she was unable to work due to severe anxiety all the time, the ALJ noted improvement in Plaintiff's anxiety and mood with mental health treatment and sobriety and fair performance on mental status exams; a July 2014 mental status exam where Plaintiff's speech and logical thought processes were normal and she completed calculations without error; improvement in September and October 2014 with depression symptoms while on Zoloft; July 2015 medical records indicating Plaintiff's anxiety was controlled but there was some worsening of depression; and, on mental status exam, Plaintiff was alert and completely oriented, cooperative, well groomed, with normal speech and appropriate affect; Plaintiff's October 2015 self-report that her anxiety was controlled, she was treating with Zoloft, and had unremarkable mental status exam findings; Plaintiff's April 2016 self-report of little to no depressive episodes lately; "I think my medications are working well," along with a mental status exam showing Plaintiff was well oriented and in a pleasant mood; May 2016 mental status exam noting Plaintiff was completely oriented, pleasant, cooperative, with normal speech, recalled 2/3 objects after a delay, and performed serial seven and three subtractions. Tr. 20 (internal citations omitted).

The ALJ further noted that, despite Plaintiff's limited education and history of special education, she manages her household financial matters, performs chores, and prepares meals daily; does needle work, uses a laptop, and was planning on returning to school. *Id.*

In not fully crediting Plaintiff's report that she has difficulty going out and being around people, the ALJ cited to a training program at Goodwill started in June 2014; a July 2014 keyboarding class at Goodwill; an October 2014, bell ringer interview at the Salvation Army, which Plaintiff felt went well; attendance at a DVR orientation in December 2014; two interviews at Walmart; the acquisition and frequent use of a bus pass; in January 2015 taking Women in Recovery class on Mondays, Feelings class on Tuesday, and a drop-in group on Fridays; enjoying some "out of house" time each week on her days off to go to the nail place with a girlfriend or going out to eat; in July 2015, participating in substance abuse treatment and grief loss groups, celebrating her birthday and the 4th of July at a friend's house to watch fireworks; in November 2015, spending Thanksgiving at a friend's house and spending time with her housemates; in January 2016, spending time with a friend at a local casino, attending smoking cessation classes on Wednesdays, Pathways Art group, and appointments; in May 2016, reporting that she loved her housemates, new church, and cessation group; and, regularly looking for work. Tr. 20-21 (internal citations omitted).

With regard to Plaintiff's statements that she is unable to work due to arthritis and her mental health problems, the ALJ noted that she stopped working for reasons other than disability. The ALJ specifically cited to Plaintiff's October 2015 statement that she was hesitant to seek work if it affected the outcome of her social security; she was actively seeking work and doing well and was hopeful to get social security so she could go to school; a February 2016 cancelled appointment due to a cleaning job; in May 2016, Plaintiff reported that she stopped working her last job at Target in 2009 after her mother fell ill and passed away; and, Plaintiff performs light to medium chores around her dwelling. Tr. 21 (internal citations omitted).

An ALJ may discount a claimant's testimony and allegations of disabling social impairments due to inconsistencies with medical evidence and evidence of the claimant's activities. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."). Even if the consistency of the activities is somewhat equivocal, if the ALJ's judgment is supported by substantial evidence "it is not [the Court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ highlighted medical evidence throughout the period of the alleged disability suggesting that Plaintiff's social impairments are less severe than she alleges. Thus, the ALJ provided specific, clear and convincing reasons, supported by medical evidence, for doubting plaintiff's credibility and did not err.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Haroian's opinion that Plaintiff has marked limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and in her ability to set realistic goals and plan independently. The ALJ should also reevaluate Dr. Neims' opinion that Plaintiff would have marked limitations in her ability to adapt to changes in a routine work setting; make simple worked related decisions; communicate effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without

interruptions from psychologically based symptoms. As necessary, the ALJ should develop the record, re-assess and determine the RFC, and proceed with steps four and five of the sequential evaluation process.

DATED this 17th day of September, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge